UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOYCE BANKS, GIRTHA GULLEY, OSCAR PENN, ROBERT GRUBBS, STAN MACLIN and HIRAM WALKER, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. 87-2371 |
| | ) |
| CITY OF PEORIA, ILLINOIS and the PEORIA ELECTION COMMISSION, | )<br>)<br>) |
| Defendants. | ) |

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO AMEND THE AMENDED FINAL CONSENT DECREE**

Now comes the Defendant, Peoria Election Commission, by its attorney, Robert G. Day, Jr., and in reply to the Plaintiffs' Response To Defendant's Motion To Amend The Amended Final Consent Decree states as follows:

**I.    The Amended Consent Decree Was Entered To Rectify A Violation Of The Voting Rights Act And Defendant's Motion Seeks Authority To Accomplish The Implementation Of That Consent Decree.**

The argument set forth by the Plaintiffs in their Response is that this court is without authority to vary the provisions of state law absent a finding that state law violates the Voting Rights Act. This argument, however, misses the point of the Peoria Election Commission's Motion requesting an amendment to the Consent Decree which amendment would allow the Peoria Election Commission to count the votes cast for the office Peoria City Council at-large at said Commission's office as opposed to counting those votes at each precinct. The very purpose of the Election Commission's Motion is to allow it to conduct at-large Peoria City Council elections that will comply with the

Consent Decree that was entered in this case August 10, 1988 so that the federal Voting Rights Act will <u>not</u> be violated.

The Consent Decree ordered the City of Peoria to use cumulative voting for its at-large City Council elections so that the Voting Rights Act would not be violated. In order for the Peoria Election Commission to continue to follow this Federal court order while conducting at-large City Council elections with its new electronic voting system, it has requested authorization from this Court to deviate from state law by counting the cumulative votes centrally at the Election Commission's office as opposed to counting those votes at each precinct. Such a deviation in no way changes the manner in which the Peoria Election Commission has counted cumulative votes in at-large City Council elections since the entry of the Consent Decree in 1988. Each one of the City Council at-large elections which have been conducted since 1988 has had its cumulative votes counted centrally at the Election Commission's office. All the Peoria Election Commission's Motion does is seek the right to continue that method of counting cumulative votes which conducting such elections using its electronic voting system.

In their Response, the Plaintiffs cite the cases of <u>Perkins vs. City of Chicago Heights</u> 47 F.3d 212, (C.A.7) Ill. (1995) and <u>Harper vs. City of Chicago Heights</u> 223 F.3d 593 (C.A.7) Ill. (2000). However, a reading of these cases show that they more readily <u>support</u> the Election Commission's Motion, than they provide precedent to oppose it.

The case of <u>Perkins v. City of Chicago Heights</u> 47 F.3d 212 (C.A.7) Ill. (1995) was based on the federal Voting Rights Act and the plaintiffs alleged that Chicago Heights' non-partisan, at-large district wide elections to elect members of Chicago Heights City Council violated Section 2 of the Voting Rights Act of 1965 by diluting the

opportunity of African-Americans to elect representatives of their choice. In attempting to fashion a remedy and settlement of the case, the plaintiffs and the City of Chicago Heights entered into a consent decree that established a form of municipal government that was not statutorily provided for under Illinois law. On appeal the U.S. Seventh Circuit Court of Appeals reversed the trial court's approval of this consent decree on the grounds that the parties did not have the authority to provide for a form of municipal government in a consent decree that was not provided for by state law.

In explaining its decision, the Appellate Court went on to state that a federal District Court <u>can</u> approve a consent decree which overrides state law provisions when such a remedy is necessary to rectify a violation of federal law. At 47 F.3d page 216 the Appellate Court in <u>Perkins</u> stated as follows:

> "Once a court has found a federal constitutional or statutory violation, however, a state law cannot prevent a necessary remedy. Under the Supremacy Clause, the federal remedy prevails. "To hold otherwise would fail to take account of the obligations of local governments, under the Supremacy Clause, to fulfill the requirements that the Constitution imposes on them." *Missouri v. Jenkins,* 495 U.S. 33, 57-58, 110 S.Ct. 1651, 1666, 109 L.E.d.2d 31 (1990). Thus, upon properly supported findings that such a remedy is *necessary* to rectify a *violation of federal law*, the district court can approve a consent decree which overrides state law provisions."

(The appellate court's decision in <u>Harper v. City of Chicago Heights</u> 223 F.3d 593 at 601 cited with approval this part of the holding in the <u>Perkins</u> decision)

In the present case the Amended Consent Decree has already been approved by this Court because the cumulative voting remedy set forth in the Consent Decree was found to be necessary to rectify a violation of the Federal Voting Rights Act. In its Motion, the Peoria Election Commission states that in order to effectuate the provisions of the Consent Decree it is necessary for the Peoria Election Commission to conduct

3

cumulative voting elections for at-large City Council seats and that a provision of the Illinois Election Code, Section 24C-12, should not be allowed to prevent the Election Commission from conducting cumulative voting elections using its current electronic voting system. <u>It is logical that if a federal District Court has the authority to approve a Consent Decree which overrides state law because the Consent Decree is necessary to rectify a violation of federal law, then that same District Court has the authority to override state law in order to accomplish the implementation of that Consent Decree.</u> This is all that the Peoria Election Commission's Motion in the present case is requesting.

    II.    **There Are Significant Advantages To Using A Direct Recording Electronic Voting System In The Elections Which The Peoria Election Commission Administers.**

The Peoria Election Commission is prepared to present evidence at a hearing on its Motion to show that the technology in voting equipment used to conduct elections in this state and across the nation has changed significantly since 1988 when the Consent Decree was entered. This technology includes, but is not limited to, conducting elections without the need for printing paper ballots by allowing voters to cast their votes electronically by touching the name of the candidate of their choice on a computer screen and thereby registering their vote for that candidate. In addition to eliminating the need to print paper ballots for each election, such voting systems have the advantage of informing a voter if he has overvoted for a particular office and of allowing the vote tally at the close of the polls to be virtually instantaneous. The United States Congress passed the Help America Vote Act of 2002 which became effective October 29, 2002. That Act provided, among other things, for Federal grants for election authorities that

4

wished to switch from punch card and other paper ballot type voting systems to electronic voting systems. The Peoria Election Commission applied for and received such a grant and, after considering various types of voting systems available, determined that the Hart e Slate Voting System was the best system available for its purposes.

It should be noted that the Peoria Election Commission conducts a total of not less than eight elections over a given four year period including, obviously, elections for United States President, United States Senator, United States House of Representative, Illinois Governor and all other Illinois State and Peoria City and County offices. Only two of these eight elections over any four year period include an election for at-large City Council for the City of Peoria. Thus, if the Peoria Election Commission determines that all of the elections which it conducts can be more efficiently conducted by using an electronic voting system such as the e Slate Voting System, it only makes sense to purchase such a voting system. The fact that purchasing such a system requires it to count only the votes for the office of at-large City Council seats at a central location does not seem a good reason not to purchase the e Slate Voting System, when it has been determined by the Commission that it is the best voting system for conducting all of the other elections which it is called upon to administer. This is particularly true in light of the fact that counting cumulative votes for at-large City Council centrally is the same way that votes in at-large City Council elections have been counted in every such election since the Amended Consent Decree was entered in 1988.

### III. Because Write-In Votes, Absentee Votes, Early Votes, Provisional Votes and Grace Period Votes Are Counted Centrally, The Vote Totals Posted At The Precinct Are Not Final Totals Anyway.

A further reason for this Court to grant the Peoria Election Commission's Motion is the fact that in May of 2006 the Illinois General Assembly passed Senate Bill 1445 which provides, among other things, that all absentee ballots, provisional ballots, early voting ballots and grace period ballots shall henceforth be counted centrally at the election authority's central ballot counting location. New section 1-9 of the Illinois Election Code (10 ILCS 5/1-9) as passed by SB 1445 provides as follows:

> Sec. 1-9. Central counting of grace period, early, absentee, and provisional ballots. Notwithstanding any statutory provision to the contrary enacted before the effective date of this amendatory Act of the 94th General Assembly, all grace period ballots, early voting ballots, absentee ballots, and provisional ballots to be counted shall be delivered to and counted at an election authority's central ballot counting location and not in precincts. References in this Code enacted before the effective date of this amendatory Act of the 94th General Assembly to delivery and counting of grace period ballots, early voting ballots, absentee ballots, or provisional ballots to or at a precinct polling place or to the proper polling place shall be construed as references to delivery and counting of those ballots to and at the election authority's central ballot counting location.

If SB 1445 is signed by the Governor (as of this writing it is reported to be on his desk for his signature) and thus becomes law in Illinois, every election in Illinois will have ballots which are required to be counted centrally after the close of the polls, given the fact that every election will have one or more absentee ballots, provisional ballots, early voted ballots or grace period ballots. Thus, the vote totals which are compiled by the voting machines in each precinct after the polls close on election day will not be final vote totals because of the fact that the votes counted at the central ballot counting location after the polls close will have to be added to these precinct vote totals. It should also be noted that if there is a valid write-in candidate for a given election, including an

6

election for at-large Peoria City Council candidates, the determination as to whether each write-in vote is valid and should be counted is made at the central office of the Peoria Election Commission by a team of two election judges. This being the case, any vote totals made by the voting machines in the precincts at the close of the polls would not be final totals since the write-ins counted centrally would have to be added to those totals. Since vote totals posted at the precinct at the close of the polls are not final totals anyway, allowing the Peoria Election Commission to count the cumulative votes cast in the precinct for an at-large City Council election at the central ballot counting location will allow those votes to be counted at the same time and location as the cumulative votes that were cast by absentee voters and early voters and provisional and grace period voters and write-in votes for the same City Council election.

For the reasons stated above, Defendant, Peoria Election Commission, respectfully requests that its Motion To Amend The Amended Final Consent Decree entered in this case on August 10, 1988 be granted and that the Peoria Election Commission be allowed to count votes cast in elections for at-large Peoria City Council seats in the Primary and General elections for those seats at the office of the Peoria City Election Commission in Peoria, Illinois.

s/ Robert G. Day, Jr.
Robert G. Day, Jr., 0596205
Attorney for Peoria Election Commission
Day and Day
201 W. McClure Ave
Peoria, IL  61604-3554
Telephone: (309) 685-2326
Fax: (309) 685-2328
bobday1@sbcglobal.net

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

**CERTIFICATION OF SERVICE**

I hereby certify that on June 22, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Donald M. Craven
    dmcraven@aol.com, don@cravenlawoffice.com

                        s/ Robert G. Day, Jr.
                        Robert G. Day, Jr., 0596205
                        Attorney for Peoria Election Commission
                        Day and Day
                        201 W. McClure Ave.
                        Peoria, IL 61604-3554
                        Phone: (309) 685-2326
                        Fax: (309) 685-2328
                        bobday1@sbcglobal.net