UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOYCE BANKS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 87-2371 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PEORIA, ILLINOIS, and | ) | |
| PEORIA ELECTION COMMISSION, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

On August 10, 1988, this court entered an Amended Final Consent Decree (the "Consent Decree") altering the procedure for electing members of the Peoria City Council. Defendant Peoria Election Commission ("PEC") was "authorized and ordered to comply with the terms of the Consent Decree and to conduct elections in accordance with the Consent Decree." The Amended Electoral Structure of the City Council, made part of the Consent Decree as Exhibit B, mandates the use of "fractional cumulative voting" for the election of Peoria City Council at-large seats. It further specifies, "The elections in all other respects will be governed by the law of the State of Illinois."

PEC filed a motion to amend the Amended Final Consent Decree [#27], and a motion to transfer this case to the United States District Court, Central District of Illinois, Peoria Division [#28]. PEC argues that the motion to amend does not deal with the substantive issues that were involved with this case when it was decided, and that all potential witnesses reside or work in Peoria, so it would be more convenient for them to appear in court in Peoria. The court finds neither argument persuasive. There is no indication that testimony is needed to rule on the motion to amend, and an amendment of the Consent Decree can hardly be considered non-substantive. The motion to transfer [#28] is denied.

The essence of the motion to amend is to obtain this court's permission to disregard state election law by finding it in conflict with federal law. PEC states that on December 21, 2005, it entered into an agreement with Hart Intercivic, Inc., for the purchase of Hart's e Slate Electronic Voting System ("the System"), which allows voters to cast – and election officials to count – votes by electronic means. The System is a Direct Recording Electronic Voting System as defined in 10 Ill. Comp Stat. 5/24C-2.

On August 23, 2003, the Illinois legislature amended the Election Code to regulate voting by electronic means. Votes cast using a Direct Recording Electronic Voting System must be tabulated at the polling place, and a "Certificate of Results" must be printed and posted at the

1

polling place and given to poll watchers. The tabulated precinct results *may* be transmitted to a central location by electronic means, but electronic transmission is not mandated by the statute. 10 Ill. Comp. Stat. 5/24C-12.

PEC states that its newly-purchased System would need to be significantly re-engineered to accommodate the accurate counting of fractional cumulative voting at the polling place. PEC asserts that the fractional cumulative votes can be easily and accurately counted and tallied at the central location. Therefore, PEC seeks an amendment to the Consent Decree stating that PEC is authorized to count and tally fractional cumulative votes at its central office location. In other words, PEC seeks an order exempting it from the provisions of Illinois election law.

The plaintiffs oppose the proposed amendment, arguing that this court has no authority to grant PEC a waiver from the provisions of the Illinois Election Code unless the state law violates the federal Voting Rights Act.

PEC filed a reply to the plaintiffs' response, followed by a motion for leave to file the reply. Ordinarily, the court would strike PEC's reply because this court's Local Rules do not allow the filing of a reply to a response to a motion (unless the motion is for summary judgment). CDIL-LR 7.1(B)(3) (no replies to responses permitted); 7.1(D)(3) (specifying format for movant's reply on summary judgment). No matter; the points raised in the reply are unpersuasive. The court briefly addresses each one in turn.

First, PEC argues that the point of requesting an amendment to this court's Consent Decree is to comply with, rather than violate, the federal Voting Rights Act. PEC states that the votes of each at-large City Council election since 1988 have been counted centrally rather than at the precinct level; they merely wish to continue what they have been doing all along. But PEC fails to state how the recently-amended state election code conflicts with federal law or the Consent Decree. The court will not second-guess the Illinois legislature's desire to implement electronic voting safeguards unless they conflict with federal law. In this case, there is no conflict. It is possible for PEC to comply fully with Illinois law and the Consent Decree.[1]

Second, PEC implies that its electronic voting System carries the imprimatur of the

---

[1] PEC cites to *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995) for the proposition that state law cannot prevent a necessary remedy to a violation of federal law. However, the state law PEC seeks to avoid does not prevent it from fulfilling its obligation pursuant to the Consent Decree. PEC also cites to *Harper v. City of Chicago Heights*, 223 F.3d 593, 601 (7th Cir. 2000) (modifying a form of government that is in conformance with Illinois law "cannot be made by a consent decree unless the court finds that the [Illinois law] would violate federal law and that such changes are necessary to ensure compliance with federal law.") (*citing Perkins*, 47 F.3d at 217). Neither case is helpful to PEC.

2

federal government because it received a federal grant to purchase the System. PEC describes the benefits of electronic voting over punch card and paper balloting. PEC further states that the System is the most efficient system, overall, for all its federal, state and local elections, *except* the elections for the at-large City Council elections. The court fails to see how the benefits of electronic voting and PEC's overall convenience are factors entitling it to relief from the requirements of the Illinois Election Code.

Third, PEC argues that the court should amend the Consent Decree because write-in votes, absentee votes, early votes, provisional votes and grace period votes will be counted centrally, so the vote totals compiled at each precinct will not be final totals. While this may be so, there is no indication that the state legislature enacted the electronic voting safeguards to provide a final precinct total. Rather, the statutory procedure is meant to provide only a precinct-level tally of electronic votes.

In sum, PEC's assertions point to one central fact: it purchased an electronic voting system without considering the requirements of the Consent Decree and state law. Now it wants to obtain permission from this court to sidestep state law because PEC must comply with a federal Consent Decree. In this case, there is no reason that PEC cannot comply with both. As PEC readily admits, "a significant redevelopment effort would be required to re-engineer the tabulation routines . . . to accommodate the counting of fractional cumulative votes at the precinct level." It may be inconvenient or expensive, but nowhere does PEC state it is impossible.

## CONCLUSION

The motion to amend the consent decree [#27] is denied. The motion to transfer this case to the Peoria Division is [#28] denied. The motion for leave to file a reply to the plaintiffs' response [#33] is denied as moot.

Entered this 21st day of July, 2006.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE